## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELPHINE D., et. al.,

        *Plaintiffs,*

   v.

UHS DOYLESTOWN, LLC, et. al.,

        *Defendants.*

CIVIL ACTION
NO. 23-2097

**Pappert, J.**　　　　　　　　　　　　　　　　　**February 21, 2024**

### MEMORANDUM

Delphine D., individually and as guardian of M.D.D., a nonverbal minor with autism, sued the inpatient healthcare facility where M.D.D. was allegedly abused, Foundations Behavioral Health,[1] along with a number of Foundations employees[2] and its corporate parents, UHS, Inc., UHS of Pennsylvania and UHS of Delaware.  Delphine alleges that while her grandson was at Foundations, he was subjected to physical and verbal abuse by a caregiver named Isaac and potentially other Foundations employees, and she asserts various state law claims including negligence, corporate negligence, breach of fiduciary duty, negligent infliction of emotional distress, assault and battery, intentional infliction of emotional distress and a claim for medical expenses.

---

[1]　　　Foundations also goes by the name UHS of Doylestown, LLC, and the two are used interchangeably throughout.

[2]　　　The Foundations Individual Defendants are Amy Smith (CEO), Christina Villani (Residential Clinical Manager), Samantha Kosik (Director of Inpatient and Social Work Services), Amy Dollinger (Personal Injury and Risk Management), Sheba Farvardin (Director of Admissions), and Isaac L/N/U (at least during the relevant period, employed at Foundations).

As they have done twice before, corporate defendants UHSI, UHSP and UHSD and the Foundations Individual Defendants move to dismiss. The first time, Delphine amended her complaint as of right. The second time, the Court held oral argument on the Defendants' motions, and for the reasons given on the record, dismissed various claims with and without prejudice. *See* (ECF Nos. 53, 54). As Delphine's counsel agreed,[3] the amended complaint was repetitive and contained broadly drafted conclusions that lacked sufficient factual specificity. Defendants contend in their current motions that the same deficiencies that plagued the first amended complaint remain. Because Delphine has cured some—but not most—of the shortcomings in previous iterations of her complaint, the Court dismisses UHSI, UHSP and UHSD from the case, but denies the motions as to UHS Doylestown, the Foundations Individual Defendants and Isaac.

I

M.D.D. is a minor with severely limited speech capabilities with autism, ODD and ADHD, and had been receiving inpatient care at Foundations Behavioral Health in Doylestown from May 13 to May 26, 2021. (Second. Am. Compl. ¶¶ 2, 23, ECF No. 56). M.D.D. suffered a behavior outburst while traveling home from Foundations and was admitted to the Children's Hospital of Philadelphia. (*Id.* ¶¶ 24–25). M.D.D. remained at CHOP until May 31 and then was re-admitted to Foundations with instructions that Foundations staff monitor him every 15 minutes for safety purposes. (*Id.* ¶¶ 25–29, 33).

---

[3]     *See, e.g.,* (Oct. 18, 2023 H'rg Tr. 38:18–20, 48:8–18).

Other than scheduled Zoom calls, Delphine had no contact with M.D.D. while he was a patient at Foundations. During June a 9 call, Delphine noticed a bleeding wound on the side of her grandson's neck. (*Id.* ¶ 39). The Foundations employee participating in the call said, "they were going to clean [M.D.D.] up" and then would return to the call. (*Id.* ¶ 40). When M.D.D. returned, however, the wound still appeared "raw and inflamed." (*Id.* ¶ 41).

Concerned, Delphine told Foundations she would be coming to the facility with her daughter to check on M.D.D. (*Id.* ¶ 41). When she got there, Delphine met with social workers and called an ambulance and the police. (*Id.* ¶ 42). Upon further examination, Delphine noticed burns on M.D.D.'s neck and torso, which M.D.D. said were caused by a man named Isaac. (*Id.* ¶¶ 44–45). Delphine wanted to remove her grandson immediately, but the Foundations staff told her M.D.D. would be considered "AWOL." (*Id.* ¶ 46). Delphine removed him from the facility a few days later. (*Id.* ¶ 47). She took him back to CHOP, where he was diagnosed with "hypopigmented lesions consistent with post-inflammatory changes." (*Id.* ¶¶ 50–51). In addition to the burns, Isaac purportedly forced M.D.D to wear a mop bucket on his head and excluded him from receiving snacks. (*Id.* ¶¶ 60–61). M.D.D. started repeating statements he never uttered before and presumably learned from Foundations staff, including: "I'm going to f--- you up when you get in the tub," "you Black mother---er," "you are going to eat your food cold" and "spit in my mouth." (*Id.* ¶ 66). Delphine contends that Foundations staff knew about this alleged abuse and did nothing to intervene, and that they took advantage of M.D.D.'s limited verbal abilities to conceal it. (*Id.* ¶¶ 62–63).

In May 2023, Delphine filed this lawsuit in the Philadelphia County Court of Common Pleas.  (ECF No. 1).  Defendants removed the case, and then moved to dismiss.  (ECF Nos. 7, 8).  Delphine filed an amended complaint, adding UHSP as a defendant, and asserting ten counts including negligence, corporate liability, breach of fiduciary duty, negligent infliction of emotional distress, assault and battery, intentional infliction of emotional distress and claims under Section 504 of the Rehabilitation Act and Title III of the Americans with Disability Act.  (ECF No. 15).  Again, Defendants moved to dismiss, and the Court held oral argument on the motions to dismiss along with their motions to quash third-party subpoenas and motion to amend their notice of removal.  (ECF No. 53).  Ruling from the bench, the Court dismissed some of Delphine's claims with prejudice and others without, granted the motions to quash on the grounds that they were untimely and granted Defendants' motion to amend their notice of removal as unopposed.  (ECF No. 54).

Delphine filed her second amended complaint on November 8, 2023, but this time, did not reassert any of the federal Rehabilitation Act or the ADA claims.  (ECF No. 58).  She then moved to remand the case back to state court, given the absence of any federal claims.  (ECF No. 59).  The Defendants again moved to dismiss and also opposed the motion to remand.  (ECF Nos. 60, 61, 65, 66).  The Court denied the motion to remand.  (ECF No. 74).

## II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

4

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the pleader is entitled to relief.  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).  Even if a party does not make a formal motion to dismiss, the Court may, on its own initiative, dismiss the complaint for failure to state a claim where the inadequacy of the complaint is apparent as a matter of law.  *See, e.g., Zaslow v. Coleman*, 103 F. Supp.3d 657, 664 (E.D. Pa. May 5, 2015).

### III

In Count I, Delphine[4] asserts a claim for "negligence, gross negligence and recklessness" against UHS Doylestown, UHS Pennsylvania, UHS Delaware, UHS Inc.,

---

[4]      Aside from the claim for medical expenses, all claims are brought by Delphine on behalf of M.D.D.

the Foundations Individual Defendants, Isaac and "John Does." At its core, Delphine's claim is that UHS Doylestown, UHSP, UHSD, UHSI and the Foundations Individual defendants failed to appropriately supervise, educate and treat M.D.D.; failed to ensure his program was safe, properly staffed, appropriately supervised and free from unreasonable risks; and failed to hire, train, supervise, discipline and retain staff who could ensure a safe and adequate environment for M.D.D. (Second. Am. Compl. ¶ 90).

Pennsylvania treats negligence, gross negligence and recklessness as a single cause of action, distinguished only by the degree of deviation from the standard of care. *See Monroe v. CBH20, LP*, 286 A.3d 785, 799 (Pa. Super. Ct. 2022). To state a *prima facie* case, a plaintiff must establish: (1) a duty or obligation recognized by the law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) damages. *Toro v. Fitness Int'l LLC*, 150 A.3d 968, 976–77 (Pa. Super. Ct. 2016). Gross negligence requires the breach to be "substantially more than ordinary carelessness, inadvertence, laxity, or indifference;" rather, the conduct must be flagrant and a gross deviation from the ordinary standard of care. *Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1164 (Pa. 1997). The conduct need not, however, "rise to the level of intentional indifference or conscious disregard of risks." *Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 19 (Pa. 2019). Recklessness requires the defendant engage in "wanton and willful misconduct." *Archibald v. Kemble*, 971 A.2d 513, 519 (Pa. Super. Ct. 2009).

A

1

As parent companies of UHS Doylestown, UHSI and UHSP note that a parent company is not liable for the wrongful acts of a subsidiary simply because the parent wholly owns the subsidiary, *United States v. Bestfoods*, 524 U.S. 51, 69 (1998), and Delphine has alleged no facts supporting any basis to pierce the corporate veil.  (Mot. To Dismiss, at 21, ECF No. 61-1).

In response, Delphine baldly alleges that UHSI and UHSP are "*de facto* operators" of Foundations, that UHSP is the sole member of UHS Doylestown, LLC and further contends that Foundations is a mere instrumentality and alter ego of UHSI and UHSP and thus the Court should pierce the corporate veil.[5]  (Resp. To Mot. To Dismiss, ECF No. 70, at 13–14).

"[B]ecause Delaware public policy does not lightly disregard the separate legal existence of corporations, a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *See MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010).  "[A] party seeking to pierce the corporate veil on an alter ego theory establishes that the controlling corporation wholly ignored the

---

[5]     Applying Pennsylvania choice of law principles, the law of the state in which an entity is incorporated determines whether a plaintiff may pierce the corporate veil through the alter ego theory.  UHS Doylestown is a Delaware LLC, and therefore, Delaware law applies to this analysis.

Relatedly, Delphine also mentions the "enterprise theory," (Resp. To Mot. Dismiss, ECF No. 70, at 12, 14), which Delaware law does not recognize.  *See, e.g., Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *7 n.5 (Del. Ch. Sept. 5, 2023).

separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham." *Culbreth v. Amosa (Pty) Ltd.*, 898 F.2d 13, 14 (3d Cir. 1990). Plaintiffs must show the corporation and its shareholders operated as a single economic entity, and that an overall element of injustice or unfairness is present. *Trevino v. Merscorp, Inc.*, 583 F. Supp.2d 521, 528 (D. Del. 2008) ("[T]he fraud or injustice that must be demonstrated in order to pierce a corporate veil law must be found in the defendants' use of the corporate form" (internal quotation marks and citations omitted)). Generally, courts consider factors such as: undercapitalization; failure to observe corporate formalities; nonpayment of dividends; the insolvency of the debtor corporation at the time; siphoning of the corporation's funds by the dominant stockholder; absence of corporate records; and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *Id.* at 528–29 (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)).

Delphine does not state a claim under the alter ego theory. She alleges no facts establishing the requisite control or injustice, nor are there any allegations of undercapitalization, nonpayment of dividends or siphoning of funds. Similarly, there is no allegation Foundations failed to maintain corporate records and was merely a façade for UHSI or UHSP, or that corporate formalities were ignored. Only in her response does Delphine point to UHS's annual report, which says "working collaboratively with facility care teams, we determine the best path to wellness and happiness for every patient." (Resp. To Mot. Dismiss, ECF No. 70, at 15). First, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). But even if such allegations were properly pled, "a statement like this in an SEC filing—in which a parent corporation is in some way consolidating by description its subsidiary's efforts and its own—is not atypical, and certainly does not suggest that . . . the parent company has become indistinguishable from the subsidiary." *MacQueen v. Union Carbide Corp.*, No. 13-831, 2014 WL 6809811, at *7 (D. Del. Dec. 3, 2014); *Calvert v. Huckins*, 875 F. Supp. 674, 678–79 (E.D. Cal. 1995) (rejecting alter ego theory and noting that consolidating the activities of a subsidiary into a parent's annual reports is a "common business practice").

2

Because Delphine has not alleged sufficient facts to pierce the corporate veil, any negligence claims against UHSI, UHSP or UHSD must be premised on their own duties or conduct. But Delphine's claims under both vicarious liability and direct corporate negligence are equally deficient.

i

In this context, vicarious liability is best illustrated by the *Scampone* litigation. In *Scampone*, the estate of a deceased woman sued the nursing home where she lived and the parent company that managed it, contending that the facility's understaffing led to her death. *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 606–07 (Pa. 2012) (*Scampone II*). After multiple appeals, the estate was ultimately allowed to proceed against the management company under a vicarious liability theory because the management company had sent "supervisory personnel" to the nursing facility each

9

week who were "involved in the daily care of patients" and "reviewed the daily reports of the care provided to each patient." *Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 617–18 (Pa. Super Ct. 2017) (*Scampone III*).  The claim against the management company was based on vicarious liability for the acts of its employees performing this "*in situ* direct supervisory role" that provided "hands-on care" to the decedent.  *Id.* at 622–23.

In contrast, there are no allegations UHSI, UHSP or UHSD sent supervisory personnel to take a "hands-on" role in M.D.D.'s care at Foundations, were involved in daily patient care or reviewed reports provided to patients.  Rather, Isaac and the John Does, the defendants who were purportedly in charge of M.D.D.'s daily care, are alleged to be employees of Foundations, not any of the parent companies.  *See* (Second Am. Compl. ¶¶ 16–17); *Emmes Co., LLC v. SAP Am., Inc.*, No. 21-19, 2021 WL 1696304, at *5 (E.D. Pa. Apr. 29, 2021) (emphasizing a plaintiff "must plead enough facts from which a plausible claim of an agency relationship can be inferred . . . not simply assert in conclusory terms that a party is another party's agent").  Therefore, UHSI, UHSP and UHSD cannot be held vicariously liable for any negligence claims pertaining to M.D.D.'s alleged injuries.

ii

Corporate negligence is a direct liability theory of negligence stemming from a medical entity's own acts or omissions.[6]  *McClure v. Parvis*, 294 F. Supp.3d 318, 327

---

[6]      The corporate negligence doctrine has been applied to hospitals and non-hospital entities, including a nursing home and the management company overseeing patient care at the nursing home.  *See Scampone II,* 57 A.3d at 597.

(E.D. Pa. 2018).  The claim "arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees." *Welsh v. Bulger*, 698 A.2d 581, 585 (Pa. 1997).  To state a claim for corporate negligence, the plaintiff must allege that the medical entity breached one of the four non-delegable duties,[7] the medical entity had actual or constructive knowledge "of the defect or procedures which created the harm," and the breach caused the patient substantial harm.  *Thompson v. Nason Hosp.*, 591 A.2d 703, 708 (Pa. 1991).  The extent to which the corporate defendant owes the plaintiff a non-delegable duty is determined by the corporate defendant's oversight and control of the medical professional directly performing the care.  *McClure*, 294 F. Supp.3d at 327.

Multiple entities cannot be subject to liability for breach of the same non-delegable duties, *Scampone II*, 57 A.3d 582, 606–07, so plaintiffs must establish the *prima facie* case of negligence with respect to each corporate defendant rather than plead boilerplate allegations against "Defendants."  *See Griffith-Johnson v. ProMedica Senior Care of Philadelphia, Pa., LLC*, No. 23-1633, 2023 WL 5939852, at *3–4 (E.D. Pa. Sept. 12, 2023).  In *Griffith-Johnson*, the court addressed a case where the plaintiff accused both a nursing home and "non-operator" entities of breaches of a duty to maintain a safe and adequate facility, hire and oversee competent staff and enforce and adopt adequate rules to ensure quality care.  *Id.* at *3.  The non-operator defendants moved to dismiss because the complaint relied on conclusory allegations and repeated

---

[7]     The four general, non-delegable duties: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its organization as to patient care; and (4) a duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients.

use of the "all-encompassing word 'Defendants'" in describing the claim.  *Id.*  In response, the plaintiff made similar arguments as Delphine does here, namely, by noting the complaint included averments of a duty to maintain a safe and adequate facility, hire and oversee competent staff, enforce and adopt adequate rules to ensure quality care and that the complaint, when "read in its entirety," stated a claim for direct liability against all defendants.  *Id.* at *3.

The court dismissed the claim as to the non-operator defendants, citing the dearth of *facts* and emphasizing the complaint contained "only generalized allegations that all Non-Operator Defendants—that is, none of them in particular—are responsible for the purportedly substandard conditions . . . ."  *Id.* at *4.  Therefore, the plaintiff failed to show whether the "requisite resident-entity relationship" existed such that a corporate negligence claim could be sustained.  *Id.* (quoting *Binder v. Weststar Mortg.*, No. 14-7073, 2016 WL 3762710, at *3 (E.D. Pa. Jul. 13, 2016) ("Even under the most liberal notice pleading requirements . . . a plaintiff must differentiate between defendants," and "[a]n allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim").

Like *Griffith-Johnson*, Delphine's corporate negligence claim is replete with boilerplate allegations and impermissibly lumps UHSI, UHSP, UHSD and UHS Doylestown together as "Defendants."  *See* (Second Am. Compl. ¶¶ 123, 125–35) Moreover, Delphine makes the same general allegations that "Defendants owed a duty to Plaintiff in the operation of the Foundations Behavioral Facility to use reasonable care in the maintenance of safe and adequate facilities, to select and retain only competent physicians and staff . . . and to formulate, adopt and enforce adequate rules

and policies to ensure quality care for its patients. (*Id.* ¶ 127). Whether or not UHSI, UHSP or UHSD owed M.D.D. a direct duty of care is an "individualized inquiry," *McClure*, 294 F. Supp.3d at 328–29, and Delphine has alleged no facts showing how UHSI, UHSP or UHSD each established the required "resident-entity relationship" for such a duty to arise. *Scampone II*, 57 A.3d at 584. As such, Delphine's corporate negligence claims as to UHSI, UHSP and UHSD are dismissed.[8]

B

Delphine also asserts a negligence claim against the Foundations Individual Defendants, (Second Am. Compl. ¶ 33), and in Count II, asserts "claims against Foundations Individual Defendants." (*Id.* ¶ 33). Though Delphine does not specifically identify a cause of action in Count II, the allegations seem to attempt to establish a negligence claim, and both counts are thus analyzed together.

Delphine's negligence claim against the Foundations Individual Defendants survives because all are alleged to have had a supervising role at Foundations related to provider training, supervision or patient safety.[9] Delphine alleges the Foundations

---

[8]     Delphine's reliance on *McClure* is unpersuasive. In *McClure*, the plaintiff alleged several distinct instances of corporate negligence, identifying which defendant was potentially liable for each. 294 F. Supp.3d at 329 ("[Plaintiff] claims that Unionville was negligent for turning her away when she was late for her appointment. She alleges that CCH was negligent for delaying her emergency room screening for almost four hours. As for the Trustees, she claims its corporate negligence stems from the events that transpired either at Unionville or CCH."). Unlike *McClure*, Delphine makes no such distinctions.

[9]     For instance, Smith (CEO) is alleged to be responsible for all policies, practices, supervision, implemented and procedures at Foundations. (Second Am. Compl. ¶ 10). Villani (Residential Clinical Manager) is similarly alleged to be responsible for policies and practices as well as the care and custody of patients residing at Foundations. (*Id.* ¶ 11). Kosik (Director of Inpatient and Social Work), is alleged to have been responsible for M.D.D.'s care, custody and safety, (*id.* ¶ 12), and Dollinger (Director of Compliance) is similarly alleged to handle patient care and safety. (*Id.* ¶ 13).

13

Individual Defendants had access to a video surveillance system which would allow them to identify and stop abuse, that M.D.D.'s injuries occurred during a time when he was supposed to be monitored at 15 minute intervals, and that all this occurred despite prior instances of patient abuse by a staff member named Bernard Otabil and "several" Central Bucks Police responses to the facility.  (*Id.* ¶¶ 102, 115–16).  These allegations suffice.  *See Kevin C. v. Foundations Behavioral Health*, No. 20-6431, 2021 WL 3737206, at *5 (E.D. Pa. Aug. 24, 2021) (denying motion to dismiss negligence claim against defendants who held supervisory roles at Foundations where the complaint alleged they failed to monitor a camera system that could have revealed abuse, failed to monitor the patient every 15 minutes and permitted a staff member to remain employed despite knowing of prior abuse).

IV

Next, Delphine brings a breach of fiduciary duty claim against UHS Doylestown, UHSP, UHSD, UHSI, Isaac and assorted John Does.  To succeed on a breach of fiduciary duty claim, a plaintiff must prove: (1) a fiduciary relationship exists; (2) the defendant "failed to act in good faith and solely for" that party's benefit; and (3) that party "suffered an injury caused by [the defendant's] breach."  *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020).  The plaintiff bears the burden of establishing the existence of a fiduciary relationship.  *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 22 (Pa. Super. Ct. 2002).

---

Finally, Farvardin (Director of Admissions) is alleged to be responsible for M.D.D.'s care as well as rules and regulations ensuring the safe treatment at the facility.  (*Id.* ¶ 14).

The hallmark of a fiduciary relationship "is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other" such that "circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Basile v. H & R Block, Inc.*, 777 A.2d 95, 101 (Pa. Super. Ct. 2001). Undue influence alone is not enough, rather, there must be "evidence that decision-making power was effectively ceded to another." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 822 (Pa. 2017). A fiduciary relationship can exist as a matter of law or it can exist based on certain facts and circumstances. *Basile*, 777 A.2d at 102.

Delphine alleges that UHS Doylestown, UHSP, UHSD and UHSI all had a fiduciary duty to M.D.D. because M.D.D. "reposed a special confidence in [them]" because of M.D.D.'s disabilities and limitations, namely, that he is nonverbal, and thus, was unable to communicate and report any potential abuse or inadequacies in his care. (Second Am. Compl. ¶¶ 63, 74, 142). In other words, M.D.D., an especially vulnerable patient, could not "meaningfully advocate for himself or chart a course for his own care," and as such, Delphine plausibly alleges Isaac and Foundations owed him a fiduciary duty. *See Kevin C. v. Foundations Behavioral Health*, No. 20-6431, 2023 WL 8480068, at *16 (E.D. Pa. Dec. 7, 2023) (denying Foundations' motion for summary judgment on breach of fiduciary duty claim where plaintiff, a nonverbal patient, alleged he was abused by one of the staff members).

However, a fiduciary duty is non-delegable, and a parent company cannot be held liable for breaching the same non-delegable duty. *Id.* at *17 (citing *Scampone II*, 57 A.3d at 582, 606–07). Because Delphine does not allege UHSD, UHSI or UHSP

owed M.D.D. other fiduciary duties, and more generally, does not allege facts showing their direct involvement in M.D.D.'s care at Foundations, the claim as to them is dismissed.

V

In Count V, Delphine asserts a negligent infliction of emotional distress claim against UHS Doylestown, UHSD, UHSI, UHSP, Isaac and John Does.  The *prima facie* case for negligent infliction of emotional distress contains the same elements as the *prima facie* negligence case, but a plaintiff can only recover under certain factual scenarios such as: (1) the defendant had a contractual or fiduciary duty to the plaintiff; (2) that the plaintiff suffered from a physical impact; (3) that the plaintiff was in the zone of danger and at risk of immediate physical injury; or (4) that the plaintiff had a contemporaneous perception of tortious injury to a close relative.  *See Doe v. Phila. Cmty. Health Alternatives AIDS Task Force,* 745 A.2d 25, 27 (Pa. Super. Ct. 2000).  A plaintiff who alleges negligent infliction of emotional distress must suffer immediate and substantial physical harm, *id.* at 28, which can be shown through "symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and  . . . ongoing mental, physical and emotional harm."  *See Doe v. Trustees of the University of Pennsylvania*, 270 F. Supp.3d 799, 828 (E.D. Pa. 2017).

Because Delphine fails to state a claim for negligence case UHSI, UHSP or UHSD, she cannot assert an NIED claim against them.  *See, e.g., Jordan v. Pennsylvania State University*, 276 A.3d 751, 774 (Pa. Super Ct. 2022).  However, the NIED claim against Isaac and UHS Doylestown remains because as discussed *supra*

16

Section IV, she plausibly alleges a confidential relationship, and M.D.D also suffered a physical impact at the hands of Isaac, which caused him "physical and psychiatric injuries, including an exacerbation of Post-Traumatic Stress Disorder." (Second Am. Compl. ¶ 151).

VI

In Count VI, Delphine alleges assault and battery against Isaac, UHS Doylestown and UHSD.[10]  Under Pennsylvania law, a battery requires (1) offensive contact with the person of another, and (2) intent to cause such action.  *Montgomery v. Bazaz-Sehgal,* 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999).  An assault is "an act intended to put another in reasonable apprehension of an immediate battery, which succeeds in causing an apprehension of such a battery."  *D'Errico v. DeFazio*, 763 A.2d 424, 431 n.2 (Pa. Super. Ct. 2000).  Delphine alleges that M.D.D. had burns on his torso that were allegedly inflicted by Isaac. (Second Am. Compl. ¶¶ 44–45).  Moreover, Delphine alleges Isaac forced M.D.D. to wear a bucket on his head and excluded him from receiving snacks.  (*Id.* ¶¶ 60, 61).  When M.D.D. was removed from Foundations, he began repeating phrases he purportedly overheard from Foundations staff, such as, "I am going to F--- you up when you get in the tub" and "you Black mother f---er."  (*Id.* ¶ 66).  Taken together, Delphine adequately alleges an assault and battery claim against Isaac.

---

[10]     The Court previously dismissed Delphine's Assault and Battery claim against UHSD with prejudice, *see* (ECF No. 54, at 3), for the reasons discussed during oral argument.  *See* (ECF No. 53).

Moreover, Delphine plausibly alleges *respondeat superior* liability as to UHS Doylestown.  An employer is "liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment."  *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (1979).  An act falls within the scope of one's employment if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. *Kevin C*, 2023 WL 8480068, at *7–8 (citing Restatement (Second) of Agency § 228 (Am. L. Inst. 1958)).  Liability of the employer may extend to intentional or criminal acts committed by the employee.  *See, e.g., Brumfield v. Sanders*, 232 F.3d 376, 381 (3d Cir. 2000) (noting that "unauthorized acts" may be within the scope of employment if they are clearly incidental to the employer's business).  Delphine alleges some of the abuse occurred while patients were receiving snacks, and statements M.D.D. allegedly learned at Foundations such as "you are going to eat your food cold" or "I am going to F--- you up when you get in the tub" suggest the abuse occurred while performing normal patient care responsibilities.  (Second Am. Compl. ¶¶ 61, 66).

VII

Finally, Delphine brings a claim for intentional infliction of emotional distress against UHS Doylestown, UHSD, Isaac and John Does.  A plaintiff may recover on an IIED claim where the defendant: (1) intentionally or recklessly (2) has engaged in "outrageous and extreme conduct," which (3) causes emotional harm so severe that it manifests physically.  *See Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122–23

(Pa. Super. Ct. 2004). The conduct must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (1998).

Delphine plausibly alleges an IIED claim against Isaac and *respondeat superior* liability as to Foundations. Delphine contends that Isaac subjected M.D.D. to "cruel and unusual punishment" designed to "torment him and break his spirit," causing M.D.D. to suffer physical and emotional injuries, including posttraumatic stress disorder. (Second Am. Compl. ¶¶ 167–68, 170). More specifically, Isaac purportedly denied M.D.D. snacks, forced him to wear a bucket on his head, verbally assaulted him and inflicted burns on M.D.D.'s body. Such conduct directed at a nonverbal minor with autism could be considered atrocious and utterly intolerable in civilized society. Moreover, as stated *supra* Section VI, Delphine has plausibly alleged this conduct occurred within the scope of Isaac's employment, and thus UHS Doylestown could be subject to *respondeat superior* liability. *See Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir. 1979).

VIII

Finally, Defendants move to strike many paragraphs of the second amended complaint. "The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" *Steak Umm Co., LLC v. Steak'Em Up, Inc.*, No. 09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009) (citing *Johnson v. Anhorn*, 334 F. Supp.2d 802, 809 (E.D. Pa. 2004)). "The purpose of a motion to strike is to clean up

19

the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc*., 244 F. Supp.2d 393, 402 (E.D. Pa. 2002).  Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Ford-Greene v. NHS, Inc*., 106 F. Supp.3d 590, 615 (E.D. Pa. 2015) (quoting *River Road Dev. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).

Defendants move to strike paragraph 86, an allegation that was previously stricken, *see* (ECF No. 53, at 3), because it referred solely to a non-working url, Buzzfeed articles and twitter accounts, uncorroborated information which could be prejudicial.  (Mot. To Dismiss, at 31, ECF 61-1).  However, Delphine has amended the allegation to include reference to UHSI staff, represented by the S.E.I.U., purporting to "echo claims of patient abuse by poorly trained staff . . . due to poor workplace support and training."  (Second Am. Compl. ¶ 86).  Delphine has supplemented the non-working url with additional allegations from UHS staff, represented by a union, attesting to poor training and patient abuse, which is directly related to Delphine's case.  The amended allegation sufficiently identifies UHS and links the content to the Defendants, and the Court denies the motion to strike paragraph 86.  *Compare Hicks v. Alarm.com Inc*, No. 20-532, 2020 WL 9261758, at *5–6 (E.D. Va. Aug. 6, 2020) (striking paragraphs that included posts from websites because, among other factors, the online reports did not specifically name the defendant nor expressly linked to the defendant).

Defendants also move to strike paragraphs 75, 79, 92(c), (d), (f), (g), (h), (j), (l), (m)-(u), (w), (x), (aa), (ee), (ff), (hh)-(jj), (mm)-(tt), (vv), (uu), 98, 99, 101, 104 and 107 of the second amended complaint on the grounds they are overly vague and allege nearly 50 acts of purported negligence.  (Mot. To Dismiss at 25–26, ECF No. 60-1); (Mot. To. Dismiss, at 31, ECF No. 61-1).[11]  Defendants had previously moved for a more definite statement with respect to these paragraphs under Federal Rule of Civil Procedure 12(e), which the Court granted.  *See* (ECF No. 54, at 4).  While Delphine added specificity to certain allegations, in numerous instances, she asserted the exact same paragraphs from the first amended complaint, and those will be stricken for failing to comply with the Court's Order.  *Compare* (Am. Compl. ¶¶ 86(d), (f), (g), (h), (k), (m), (n), (o), (q), (r), (s), (t), (u), (w), (x), (aa), (ee), (ff), (hh), (ii), (jj), (mm), (nn), (oo), (pp), (rr). (ss), (tt) and (vv)), *with* (Second Am. Compl. ¶¶ 92(d), (f), (g), (h), (k), (m), (n), (o), (q), (r), (s), (t), (u), (w), (x), (aa), (ee), (ff), (hh), (ii), (jj), (mm), (nn), (oo), (pp), (rr), (ss), (tt), and (vv)).  *See* Fed. R. Civ. P. 12(e) ("If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.").

However, Delphine did provide more context to other allegations, specifically paragraphs 75, 79, 98, 99, 101, 104 and 107 of the second amended complaint. *Compare* (Am. Compl. ¶¶ 73, 74, 92, 93, 95), *with* (Second Am. Compl. ¶¶ 75, 79, 98, 99, 101, 104 and 107).  Federal Rule of Civil Procedure 12(e) is not meant to supply "greater particularization of information alleged in the complaint or which presents a

---

[11]     ECF No. 61-1 refers to striking the sub-parts of paragraph 96.  Paragraph 96 does not have any subparts; the Court assumes it references paragraph 92.  *See* (ECF No. 61-1, at 31).

proper subject for discovery," but instead is reserved for the uncommon situation where a defendant "cannot respond, even with a simple denial, in good faith, without prejudice to [itself]." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp.2d 729, 737 (D.N.J. 2017) (alteration in original) (citations omitted).  For these allegations, "it cannot be said that the plaintiff's complaint is so vague, ambiguous or unintelligible that the defendants would be stymied in their efforts to frame a responsive pleading." *Andrews v. D2 Logistics, Inc.*, No. 21-869, 2022 WL 178817, at *8 (M.D. Pa. Jan. 19, 2022).  As such, the Defendants motion to strike is granted as to paragraphs 92(d), (f), (g), (h), (k), (m), (n), (o), (q), (r), (s), (t), (u), (w), (x), (aa), (ee), (ff), (hh), (ii), (jj), (mm), (nn), (oo), (pp), (rr), (ss), (tt), and (vv)) but denied as to paragraphs 75, 79, 98, 99, 101, 104 and 107.

Finally, Defendants move to strike reference to the John Doe defendants. (ECF 61-1, at 31–34).  Delphine is permitted to use John Doe defendants "until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton County*, 336 Fed. App'x 248, 250 (3d Cir. 2009).  If reasonable discovery does not unveil the proper entities, the Court can dismiss the John Doe defendants then. *Id.*

IX

At oral argument, the Court informed Delphine the second amended complaint was her final opportunity to amend. *See* (Oct. 18, 2023 H'rg Tr. 3:1–8).  After three attempts, she still fails to allege sufficient facts implicating UHSI, UHSP or UHSD in any of the claims asserted against them.  Further amendment would be futile and those claims will be dismissed with prejudice. *See, e.g., Gage v. Preferred Contractors Ins. Co.*

*Risk Retention Grp. LLC*, No. 19-20396, 2022 WL 88291, at *2 (D.N.J. Jan. 7, 2022)

("Because the Court was clear that the Second Amended Complaint was [the plaintiff's]

last opportunity to amend, the Court dismisses with prejudice.").  *Foman v. Davis*, 371

U.S. 178, 182 (1962) (noting courts have discretion to dismiss claims with prejudice

when amendment would be futile).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

GERALD J. PAPPERT, J.